**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 1:23-cv-23590-LEIBOWITZ/REID**

**NINA QUINN-DAVIS,**

    *Plaintiff*,

v.

**TRUEACCORD CORP.,**

    *Defendant*.

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

"If a tree falls in a forest and no one is around to hear it, does it make a sound?"[1] This case poses a modern variation of that old chestnut, with a tip-of-the-cap to our elected representatives in Washington D.C. and Tallahassee: If I send an e-mail to you at 10:14 p.m., but you only open and read it the following day, did I "communicate with" you the night before when I sent it, or on the following day when you read it? Rather than engaging in a discourse on the interplay between perception and reality, this case turns on what "communicating with" another person means, and whether an administrative agency's view of that phrase should carry the day.

Before the Court is Defendant's Motion for Summary Judgment [ECF No. 44] (the "Motion"), filed on August 2, 2024. Plaintiff has responded in opposition [ECF No. 48], and Defendant has replied [ECF No. 50]. After considering the parties' arguments, the parties' Statements of Material

---

[1] This question is often attributed to the philosopher George Berkeley, although his work doesn't contain the exact quotation. *See generally* G. Berkeley, A Treatise Concerning the Principles of Human Knowledge (1710).

Facts, the record evidence, and the relevant law, the Court GRANTS the Motion for the reasons discussed below.

## I.     BACKGROUND

The parties' dispute concerns a debt-collection e-mail Defendant TrueAccord Corp. ("TrueAccord") sent to Plaintiff Nina Quinn-Davis ("Quinn-Davis") on November 29, 2022. In the First Amended Class Action Complaint ("Complaint"), Quinn-Davis alleges that Trueaccord sent the November 29, 2022, e-mail at an "inconvenient" and presumptively unlawful time— 10:14 p.m. EST— in violation of the Fair Debt Collections Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA") and the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55–559.785 ("FCCPA"). [ECF No. 23]. According to Defendant, the timestamp data in the evidentiary record corresponding to the November 29, 2022, e-mail shows (1) TrueAccord *sent* the e-mail at 8:23 p.m.; (2) Plaintiff's e-mail service provider, Yahoo!, *delivered* the e-mail to Plaintiff's inbox at 10:14 p.m.; and (3) the e-mail was first *opened* at 11:44 a.m. on November 30, 2022. [*See* Declaration of Raja Datta, ("Datta Decl.") [ECF No. 44-1 ¶ 10].

In Count I, Plaintiff asserts a FCCPA claim under Section 559.72(17), Florida Statutes, which prohibits a person collecting a consumer debt from "[c]ommunicat[ing] with the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without prior consent of the debtor." [ECF No. 23 ¶¶ 47–50]. In Count II, Plaintiff asserts a FDCPA claim under Title 15, United States Code, Section 1692c(a)(1), which prohibits a debt collector from "communicat[ing] with a consumer in connection with the collection of any debt . . . at any unusual time or place known or which should be known to be inconvenient to the consumer." [*Id.* ¶¶ 51–54]. Like the FCCPA, the FDCPA provides that "[i]n the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location." 15 U.S.C. § 1692c(a)(1).

By way of background, Plaintiff filed her Class Action Complaint on September 19, 2023, based upon this single e-mail. [ECF No. 1]. A printout of the e-mail attached to the operative complaint purports to be from Aaron Munoz at aaron@trueaccord.com, and contains the Subject Line: "Let's talk about your account." [ECF No. 23-1 at 1]. The body of the e-mail reads as follows:

> Nina, you have an outstanding debt of $525.03 with Jefferson Capital Systems, LLC (current creditor of your original CELLCO PARTNERSHIP DBA VERIZON WIRELESS account). Call us at (866) 611-2731 (TTY 771) or visit our website to set up a payment plan so we can work together on this. Take the first step to resolving this. Talk to us.

[*Id.*]. From this one e-mail, Quinn-Davis sought to represent classes of Miami-Dade County consumers to whom TrueAccord sent e-mails between 9:00 p.m. and 8:00 a.m. (local time) in connection with the collection of a consumer debt whose original creditor was Cellco Partnership d/b/a Verizon Wireless. [*See* ECF No. 23 ¶¶ 34-38].

Because Plaintiff failed to file a motion for class certification by the deadline set forth in the Court's Scheduling Order, this case proceeded to summary judgment with Quinn-Davis as sole Plaintiff. [*See* ECF Nos. 36, 41]. After Defendant's Motion for Summary Judgment was ripe for resolution, the Court directed the parties to file supplemental briefing on how the Florida courts treat an electronic communication's timing under the FCCPA, because the parties' papers addressed only the timing of electronic communications under the FDCPA. [*See* ECF No. 55]. The parties have supplemented the record with their respective positions on this question. [ECF Nos. 56, 57].

## II.   LEGAL STANDARDS

### A.   Standard of Review

Under Rule 56 of the Federal Rules of Civil Procedure, "summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010) (citations and internal quotation marks omitted). "The moving party bears the initial burden to show the district court, by

reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991).

Rule 56 "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (internal quotation marks omitted). Thus, the non-moving party "may not rest upon the mere allegations or denials of his pleadings, but … must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.") (citations omitted).

The Court must view the evidence in the light most favorable to the non-moving party, and summary judgment is inappropriate where a genuine issue of material fact remains. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259–60 (11th Cir. 2004) (citations omitted). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson,* 477 U.S. at 251–52.

"Summary judgment should be granted only when *the evidence produced* by the non-moving party, when viewed in a light most favorable to that party, fails to establish a genuine issue." *Tippens v. Celotex*

*Corp.*, 805 F.2d 949, 953 (11th Cir. 1986) (citations omitted) (emphasis added).  A corollary therefore flows from this legal principle:  "The general rule is that inadmissible hearsay cannot be considered on a motion for summary judgment," unless it can "be reduced to admissible evidence at trial or reduced to admissible form."  *Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999) (citations and internal quotation marks omitted).

    **B.**    **FDCPA/FCCPA claims**

The FDCPA "prohibits debt collectors from engaging in abusive, deceptive, or unfair debt collection practices."  *Riley v. Home Retention Servs., Inc.*, No. 1:14-cv-20106, 2014 WL 11906643, at *3 (S.D. Fla. 2014) (citing 15 U.S.C. § 1692 *et seq*.).  To prevail on a claim under the FDCPA, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA."  *Hendrix-Smith v. Santander Consumer USA,* No. 20-22254-CIV, 2021 WL 1967884, at *5 (S.D. Fla. Feb. 16, 2021), *report and recommendation adopted,* No. 1:20-cv-22254, 2021 WL 1963798 (S.D. Fla. May 17, 2021) (citations and quotations omitted). Florida's FCCPA requires substantially the same elements to state a claim for relief as the federal FDCPA.  *See Ziemniak v. Goede & Adamczyk, PLLC*, No. 11-62286-CIV, 2012 WL 5868385, at *2 (S.D. Fla. Nov. 19, 2012).

    **III.**    **DISCUSSION**

The parties agree that Quinn-Davis satisfies the first two elements of a FDCPA/FCCPA claim: (1) Plaintiff has been the object of collection activity arising from a consumer debt; and (2) TrueAccord is a "debt collector" under the FDCPA and a "person" under the FCCPA.[2]  So, the

---

[2]   *See* Fla. Stat. § 559.72; *Alhassid v. Nationstar Mortg. LLC,* 771 F. App'x 965, 969 (11th Cir. 2019) (per curiam) ("[T]he FCCPA applies to any 'person' collecting a consumer debt; it is not limited to statutorily defined 'debt collectors,' like the FDCPA."); *Helman v. Bank of Am.*, 685 F. App'x 723, 727

Motion boils down to whether a genuine issue exists as to the third element— TrueAccord's engaging in an "act or omission prohibited" by the FDCPA or the FCCPA (collectively, "the Acts").

The prohibited act or omission alleged in the Complaint is TrueAccord's act of *sending* the November 29, 2022, e-mail after 9:00 p.m. [ECF No. 23 ¶ 32; ECF No. 48 at 3]. In the Motion, TrueAccord appears to agree that the subject e-mail's *"sent"* time is the proper focus for determining whether TrueAccord "communicated with" Quinn-Davis about a consumer debt in violation of the Acts. [*See* ECF No. 44]. In her supplemental brief, however, Quinn-Davis argues that this Court should adopt a "more protective" construction of the FCCPA "and hold that a 'communication' under the FCCPA occurs when the communication is *received*." [ECF No. 57 at 3 (emphasis added)].³ So before the Court reaches the merits of TrueAccord's Motion, the Court must determine precisely when a prohibited communication, specifically an electronic mail communication, occurs under the FDCPA and the FCCPA.

    A.    **"Communicate with a consumer" under the FDCPA**

The FDCPA provides in relevant part:

> Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, **a debt collector may not *communicate with a consumer* in connection with the collection of any debt**--
> (1) at any unusual time or place or a time or place known or which should be known to be inconvenient to the consumer. In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock postmeridian, local time at the consumer's location.

---

(11th Cir. 2017) (per curiam) ("The FCCPA applies to anyone who attempts to collect a consumer debt which, unlike the FDCPA, brings [the non-debt-collection-agency defendant] within its ambit.").

³    As an aside, the positions of the parties here are counter-intuitive; indeed, one might have expected each of them to take the opposite view. Nevertheless, I am not "hidebound" to follow them. *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76, 379–380 (2020) (explaining that party-presentation principle is "supple, not ironclad," and that error only occurs by "radical transformation" of the case beyond that presented by counsel).

15 U.S.C. § 1692c(a)(1) (bold text and italics added).[4]  If nothing else, the plain language and structure of this paragraph establishes three things:

1. The basic prohibition:  A debt collector may not "communicate with a consumer" in connection with any debt collection at (i) any unusual time or place, or (ii) a time or place known or which should be known to be inconvenient to the consumer.

2. The safe harbor:  In the absence of the debt collector's knowledge of circumstances to the contrary, a debt collector *shall assume* that *communicating with* a consumer between 8:00 a.m. and 9:00 p.m. (at the consumer's location) *is convenient* (and therefore does not trigger liability).

3. The prior consent exemption:  If the "prior consent of the consumer" is given "directly to the debt collector," then the debt collector can engage in the activity described in #1 above, regardless of the debt collector's knowledge or assumptions of the consumer's communication preferences.[5]

*See* 15 U.S.C. § 1692c(a)(1).  The FDCPA itself defines "communication" as "the conveying of information regarding a debt directly or indirectly *to any person* through any medium."  15 U.S.C. § 1692a(2) (emphasis added).[6]  Although the FDCPA establishes a safe harbor that creates a statutory

---

[4] The FTC and CFPB regulations expand prohibited debt-collection communications to include "attempted" communications.  12 C.F.R. § 1006.6(i) ("a debt collector must not communicate *or attempt to communicate* with a consumer in connection with the collection of any debt") (emphasis added).  This interpretation flatly contradicts the statutory language.

[5] Under the FTC and CFPB regulations, consent must be "given directly to the debt collector during a communication that does not" occur at an inconvenient time.  *See* 12 C.F.R. § 1006.6(b)(4)(i).

[6] Interestingly, current definitions of the verb "convey," according to Merriam-Webster's Dictionary, means "to bear from one place *to another*," or "to impart or communicate by statement, suggestion or appearance," or "to transfer or deliver (something such as property) *to another* especially by a sealed writing," or "to cause to pass from one place *to another*."  *Convey*, MERRIAM-WEBSTER DICTIONARY https://www.merriam-webster.com/dictionary/communicate (last visited November 10, 2024) (emphasis added).  Quick aside: unless circumstances point elsewhere, generally American

presumption about a "convenient" time period in which to communicate with a consumer, the statute on its face doesn't completely resolve the sent/received question buried within the phrase "communicat[ing] with a consumer." Undeterred, this Court considers the plain meaning of the statutory phrase "communicate with a consumer" to determine what that means in terms of an e-mail communication. *See Polycarpe v. E&S Landscaping Serv., Inc.*, 616 F.3d 1217, 1223 (11th Cir. 2010) ("[w]e interpret words that are not defined in a statute with their ordinary and plain meaning because we assume that Congress uses words in a statute as they are commonly understood; we give each provision full effect.") (citation and internal quotation marks omitted).

In support of its Motion, TrueAccord relies on the Consumer Financial Protection Bureau's ("CFPB") official interpretation of the timing of debt-collection electronic communications. The CFPB interprets "communicate with" under the FDCPA to mean that a debt collector communicates with a consumer when the debt collector "sends" an electronic communication. *See* CONSUMER FINANCIAL PROTECTION BUREAU, *Official Interpretation of* 12 C.F.R. Part 1006.6(b)(1)(i)(1) ("Regulation F"), https://www.consumerfinance.gov/rules-policy/regulations/1006/6/ (last visited Oct. 31, 2024).[7] While the CFPB interpretation may have some appeal (on policy grounds), I am neither bound by it nor required to defer to it. *See generally Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024) (overruling *Chevron USA, Inc. v. Nat'l Res. Defense Council,* 467 U.S. 837 (1984)). "It is emphatically the

---

dictionary publishing houses (like Noah Webster's) are *primus inter pares* when it comes to dictionary definitions during a specific period. *See generally*, D. Micklethwait, Noah Webster and the American Dictionary (McFarland & Company, Inc. 2000). While the 1977 version of Webster's dictionary would be ideal for this case (the year the statutory provision was enacted), this Court could not find one.

7       The CFPB's official interpretation "prohibits a debt collector from communicating or attempting to communicate, through electronic communication media, at any unusual time, or at a time that the debt collector knows or should know is inconvenient to the consumer. For purposes of determining the time of an electronic communication, such as email or text message under § 100.6(b)(1)(i), **an electronic communication occurs when the debt collector sends it, not, for example, when the consumer receives or views it.**" (Bold text added.)

province and duty of the judicial department to say what the law is." *Loper,* 144 S.Ct. at 2257 (citing *Marbury v. Madison*, 1 Cranch 137, 177, 2 L.Ed. 60 (1803)).

In short, the Court concludes that the phrase used by Congress means that you must actually transmit or transfer information *to another person* in order to "communicate with a consumer" and trigger potential liability under the FDCPA. Merely sending information into the ether of the internet by pushing "send" on your e-mail application does not suffice.

You don't need to be a Ph.D. in computer science to take judicial notice of the basic nature of e-mail communication. Hundreds of millions of Americans use e-mail all the time. Sending an email communication is only half the equation. As a policy matter, it may make sense why the CFPB chose to interpret the FDCPA as prohibiting a debt collector from sending an e-mail after hours, regardless of when that communication was (if ever) received. That may be viewed as more protective of consumers in many cases, but the CFPB's interpretation is inconsistent with the plain meaning of the words "communicate *with* a consumer" that Congress wrote and the President signed into law. Simply put, if a debt collector "sends" an e-mail but the consumer never "receives" it, the debt collector has not "shared information" or "communicated with" anyone.

So, what is a prohibited e-mail communication under the FDCPA? When precisely does liability attach? If a debt collector sends an e-mail after 9:00 p.m. and the consumer opens and reads it at 9:00 a.m. the following day, does that violate the FDCPA? What if the debt collector sends an e-mail before 9:00 p.m. but the consumer reads it at midnight? Liable? Clearly, the FDCPA's safe harbor was aimed at protecting consumers from after-hours noisy telephone rings—not e-mails sitting in one's e-mail box (silently) overnight.[8]

---

[8] Upon signing the FDCPA into law, President Carter remarked that: "Testimony that was given during the hearings on this bill showed that quite often innocent consumers—some of whom had even been misidentified as debtors—were harassed by profane language, by false statements made to them directly or by telephone, by calls after midnight to disturb a family, by threats which were

Even though the CFPB's interpretation provides a bright-line rule for some debt collector communication, given that a debt collector can control only the timing of when it sends an e-mail and not when it is received and opened, it reads the word "with" out of the statute. No e-mail communication "with" the consumer takes place until the consumer reads the message, or at least receives it. Thus, the Court refuses to adopt Regulation F's interpretation of when a debt collector "communicates with a consumer" (according to the "sent" time of the email).

### B. "Communicate with" under the FCCPA

The FCCPA uses similar language to that found in the FDCPA regarding this specific prohibited act of debt collector communication with consumers. "In collecting consumer debts no person shall: … **Communicate with** the debtor between the hours of 9 p.m. and 8 a.m. in the debtor's time zone without the prior consent of the debtor." Fla. Stat. Ann. § 559.72(17) (emphasis added).[9]

According to the parties, Florida has not construed the FCCPA in the e-mail context. [*See* ECF Nos. 56, 57]. Indeed, this Court found only two Florida cases where the terms FCCPA and e-mail appear. *See Davis v. Sheridan Healthcare, Inc.,* 281 So.3d 1259, 1262 (Fla. 2nd DCA 2019) (holding that workers' compensation law does not bar FCCPA claim against medical service providers) opinion approved of sub nom. *Lab'y Corp. of Am. v. Davis*, 339 So.3d 318 (Fla. 2022); *Colombo v. Robertson, Anschutz & Schneid, P.L.*, 341 So.3d 1126, 1127 (Fla. 4th DCA 2022) (finding no FCCPA violation). Neither of the cases is on point.

However, Florida principles of statutory construction are set forth in *Davis,* and well-established otherwise. In Florida, "to determine the legislative intent behind a statute, a court must

---

contrary to the law, by alleging that consumers were violating the law when in fact they weren't." Administration of Jimmy Carter p. 1382 (Sept. 19, 1977).

[9]   Because this case can be resolved on the interpretation of "communicate with," there is no need to parse the "prior consent" exception language in the FDCPA and FCCPA context and decide whether that exception further insulates the Defendant from liability or not.

first examine the plain meaning of the statute's text." *Davis*, 281 So.3d at 1262. "[T]he statute's text is the most reliable and authoritative expression of the Legislature's intent." *Fla. Farm Bureau Cas. Ins. Co. v. Cox,* 967 So. 2d 815, 820 (Fla. 2007) (quoting *V.K.E. v. State,* 934 So. 2d 1276, 1286 (Fla. 2006) (internal quotation marks omitted). "If the plain meaning of the language is clear and unambiguous, then the Court need not delve into principles of statutory construction unless that meaning leads to a result that is either unreasonable or clearly contrary to legislative intent." *Polite v. State*, 973 So.2d 1107, 1111 (Fla. 2007) (citation omitted); *see also Fla. Dep't of Children & Family Servs. v. P.E.,* 14 So.3d 228, 234 (Fla. 2009).

The FCCPA, like the FDCPA, uses the phrase "communicate with." And, like the FDCPA, the FCCPA defines "communication" as "the conveying of information regarding a debt directly or indirectly *to any person* through any medium." Fla. Stat. § 559.55(2) (emphasis added). It follows then that "communicate with" means the same thing under the FCCPA as it does under the FDCPA. That is especially true since Florida applies the same rules of statutory construction as this Court applied to the FDCPA. Applying the same rules to identical text ("communicate with") should produce the same interpretation. Moreover, as TrueAccord and Quinn-Davis acknowledge, Florida courts give "due consideration and great weight" to both federal court decisions and federal agency interpretations of the FDCPA when construing the FCCPA because many of the provisions are identical and/or overlap. [ECF No. 57 at 2; ECF No. 56 at 2–3 (citing *See Oppenheim v. I.C. Sys.*, 627 F.3d 833, 839 (11th Cir. 2010) (per curiam) ("[T]he FCCPA specifies that, in construing its provisions, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission[10]

---

[10] Initially, the Federal Trade Commission was the sole federal agency tasked with implementing the FDCPA and regulating debt collectors. *See Jeter v. Credit Bureau*, 754 F.2d 907, 912 (11th Cir. 1985) ("The FDCPA expands already existing Federal Trade Commission jurisdiction over unfair or deceptive acts and practices of collection agencies.") (cleaned up); 15 U.S.C § 1692l(a). However, in 2010, Congress created the Consumer Financial Protection Bureau which was given authority to "prescribe rules with respect to the collection of debts by debt collectors." 15 U.S.C. § 1692l(b)(6).

and the federal courts relating to the federal Fair Debt Collection Practices Act."); *Parham v. Seattle Serv. Bureau*, 656 F. App'x 474, 478 (11th Cir. 2016) (per curiam) ("[A]s to the application and construction of the FCCPA, the FCCPA provides that due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."); *see also Dish Network Serv., LLC v. Myers*, 87 So.3d 72, 77 (Fla. 2nd DCA 2012) ("The FCCPA is very similar to the federal FDCPA. As a result, the Florida Legislature expressly requires that courts apply and construe the civil remedies provision in the Florida act with an eye to the federal law.").[11]

Accordingly, the undersigned concludes that the Florida courts would construe "communicate with" under the FCCPA as the Court has construed the terms under the FDCPA above.

### C. **Defendant did not communicate with Plaintiff in violation of the Acts**.

Now that the Court has determined the meaning of "communicate with" under the Acts, the Court applies it within TrueAccord's Motion for Summary Judgment. In support of the Motion, TrueAccord put forward a declaration by its Manager for Product Channel Operations, Raja Datta ("Datta"). [*See* Datta Decl., ECF No. 44-1]. Datta attests to (1) overseeing TrueAccord's e-mail communications with eighteen (18) years' experience in the field, and (2) reviewing Quinn-Davis's e-mail account, specifically the November 29, 2022, e-mail at issue in this case. [*Id.* ¶¶ 3, 5]. According

---

[11] Florida abandoned *Chevron* deference long before the Supreme Court. "In our review, we do not give deference to agency interpretations of statutes or rules… As stated by Article V, Section 21 of the Florida Constitution: 'In interpreting a state statute or rule, a state court or an officer hearing an administrative action pursuant to general law may not defer to an administrative agency's interpretation of such statute or rule and must instead interpret such statute or rule de novo.'" *M.N. v. Agency for Persons With Disabilities,* No. 5D2024-0138, 2024 WL 4394926, at *3 (Fla. 5th DCA Oct. 4, 2024) (citations omitted); *see also MB Doral, LLC v. Dep't of Bus. & Pro. Reg., Div. of Alcoholic Beverages & Tobacco*, 295 So.3d 850, 853 (Fla. 1st DCA 2020) ("With the passage of article V, section 21 of the Florida Constitution, the previously afforded deference to the agency's interpretation of the statutes it implements has been abolished; our review is de novo.") (citation omitted).

to Datta, the timestamp data corresponding to the November 29, 2022, e-mail shows (1) TrueAccord *sent* the e-mail at 8:23 p.m.; (2) Quinn-Davis's e-mail service provider, Yahoo!, *delivered* the e-mail to Quinn-Davis's inbox at 10:14 p.m.; and (3) the e-mail was first *opened* at 11:44 a.m. on November 30, 2022. [*Id.* ¶ 10]. Under this Court's interpretation of both Acts, TrueAccord thus "communicated with" Quinn-Davis at 11:44 a.m. local time on November 30, 2022. Only then did TrueAccord "convey" or "share" the debt collection information "with" Quinn-Davis. Because TrueAccord communicated with Quinn-Davis between the hours of 8:00 a.m. and 9:00 p.m. local time, TrueAccord "shall assume that the convenient time for communicating with" Quinn-Davis was when it did so, and therefore no violation occurred. *See* 15 U.S.C. § 1692c(a)(1).

Importantly, when it comes to evidence of the Quinn-Davis's "convenience" or communications preferences, there is no evidence in the record of "knowledge of circumstances to the contrary." *See id.* In response to TrueAccord's Motion, Quinn-Davis did not submit a counter-affidavit. Nor did she file a declaration authenticating the e-mail printout attached as an exhibit to her unverified Complaint. [*See* ECF No. 23-1]. Instead, Quinn-Davis attempts to create an issue of material fact by relying on the unauthenticated e-mail printout that purports to show a "sent" time of 10:14:08 p.m. EST [*see* ECF No. 48-1 at 2]. Even if the Court accepted what amounts to hearsay on the issue of the e-mail's sent time, however, TrueAccord "communicated with" Quinn-Davis only when she opened the e-mail at 11:44 a.m. on November 30, 2022. Quinn-Davis has put forward no evidence as to the time she opened or read the email message. Thus, the uncontroverted record evidence is that TrueAccord communicated with Quinn-Davis during hours that are presumptively allowed under both Acts.

## IV. CONCLUSION

The Court has considered Defendant's Motion, the parties' Statements of Material Facts, Plaintiff's response in opposition, Defendant's reply, the parties' supplemental briefs, pertinent

portions of the record, and the relevant law.  Upon due consideration, it is hereby **ORDERED AND ADJUDGED** as follows:

    1.    Defendant's Motion for Summary Judgment [**ECF No. 44**] is **GRANTED**.

    2.    Defendant shall submit a proposed Final Judgment in Microsoft Word format to leibowitz@flsd.uscourts.gov **no later than December 2, 2024.**

    **DONE AND ORDERED** in the Southern District of Florida this 19th day of November, 2024.

*[signature]*

DAVID S. LEIBOWITZ
UNITED STATES DISTRICT JUDGE

cc:    counsel of record